NOTICE
Decision filed 08/12/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 260432-U

NO. 5-26-0432

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jefferson County. |
| | ) | |
| v. | ) | No. 26-CF-154 |
| | ) | |
| TIMOTHY S. KEMPF, | ) | Honorable |
| | ) | Jerry E. Crisel, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CLARKE delivered the judgment of the court.
Justices Sholar and Bollinger concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court's orders granting the State's verified petition to deny pretrial release and denying the defendant's motions for relief are affirmed.

¶ 2    The defendant, Timothy S. Kempf, appeals the Jefferson County circuit court's May 5, 2026, order granting the State's petition to deny pretrial release, and the May 14, 2026, denial of his motion for relief. For the following reasons, we affirm.

¶ 3                                I. BACKGROUND

¶ 4    On May 4, 2026, the defendant was charged with unlawful methamphetamine conspiracy, a Class X felony, in that the defendant, with the intent to commit unlawful delivery of methamphetamine (720 ILCS 646/55(a)(1) (West 2024)), agreed with Kendall Degrave and Brianna Pino to deliver a substance containing methamphetamine to Michael Clarida, and that the

1

defendant obtained 100 or more, but less than 400, grams of a substance containing methamphetamine so that delivery could be and was in fact made to Clarida (*id.* § 65(a)). He was also charged with unlawful possession of a weapon by a felon, being metal knuckles, a Class 3 felony. 720 ILCS 5/24-1.1(a) (West 2024). The same day, the State filed a verified petition to detain, alleging that the defendant was charged with a felony for which a sentence of imprisonment was required by law upon conviction, and the defendant's pretrial release posed a real and present threat to the safety of any person or persons or the community.

¶ 5    The circuit court held a hearing on May 5, 2026. The State proceeded by proffer, stating that Deputy Harris, Deputy Mueckenheim, and Detective Johnson of the Jefferson County Sheriff's Department and Detective Hails of the Mt. Vernon Police Department would collectively testify to the following. On May 3, at approximately 11:30 p.m., Mueckenheim was on routine patrol and observed a suspicious vehicle in the parking lot of a Huck's gas station in Mt. Vernon, Illinois. Another deputy, Harris, was on patrol in the area and arrived at the gas station as well. Mueckenheim observed a white Chevrolet Camaro leave the gas station and ran the license plates to discover that it was registered to the codefendant Pino, who had an expired driver's license. Mueckenheim conducted a traffic stop and confirmed that the driver was Pino. Sergeant Pendley arrived, and his K9 partner conducted a free-air sniff on the Camaro, which resulted in a positive alert. During a search of the Camaro, officers discovered a silver scale and a black scale with a substance on them, which field tested positive for methamphetamine. Officers also discovered a black backpack containing male clothes and modified brass knuckles "which were shaped like an eagle and appeared to have had at one time an affixed blade attached; however, the fixed blade had been broken off or ground down." All the occupants of the vehicle were detained.

¶ 6    While awaiting the tow of the Camaro, Mueckenheim advised the defendant of his *Miranda* rights (*Miranda v. Arizona*, 384 U.S. 436 (1966)), and the defendant agreed to speak with law enforcement. The defendant said the backpack in the back seat was his and that the brass knuckles inside the bag belonged to him. The defendant said he was unaware it was illegal for him to have brass knuckles and he owned them for his protection. Mueckenheim confirmed with dispatch that the defendant was a convicted felon. The defendant stated that he received a ride from Pino and did not know her, but did know Degrave and formerly dated her. The defendant denied any knowledge of the scales in the vehicle. He had $798 on his person, which was seized.

¶ 7    All three codefendants were taken to the Jefferson County Justice Center to be interviewed by Detective Hails. Pino informed Hails that she met Degrave a month prior when they were briefly roommates. Degrave asked Pino to pick up the defendant in Belleville, Illinois, and drive them to Mt. Vernon in exchange for gas money. Pino later changed her account of the events, informing Hails that when Pino picked Degrave up, Pino called an individual to inquire about purchasing methamphetamine. Pino and Degrave purchased the methamphetamine in St. Louis, Missouri, then drove to Belleville to pick up the defendant, who had three to four ounces of methamphetamine. The methamphetamine purchased in St. Louis and that the defendant possessed were combined and transported to the Huck's gas station in Mt. Vernon.

¶ 8    Once at the gas station, the defendant, Pino, and Degrave played the slot machines while they discussed the price of the methamphetamine. Pino believed Degrave shorted the defendant of some money. Degrave later delivered the methamphetamine to Michael Clarida. After the delivery, Degrave believed Clarida did not pay the full amount, and she attempted to call Clarida with no answer. Detective Hails was aware Clarida never answered the phone because he was stopped in a separate vehicle and arrested due to possession of the methamphetamine.

3

¶ 9    Detective Johnson interviewed Degrave, who informed him that she was homeless but was staying in Collinsville, Illinois. Clarida contacted Degrave and stated that he was getting sick, so Degrave contacted the defendant to obtain the methamphetamine for Clarida. Degrave confirmed that Pino drove her and the defendant to Mt. Vernon to meet Clarida. The defendant gave Degrave the methamphetamine, which she then delivered to Clarida for a few hundred dollars.

¶ 10    Detective Hails interviewed the defendant, who informed Hails that the defendant had a prior federal conviction for conspiracy to manufacture methamphetamine, for which he had served eight years in the Federal Bureau of Prisons. The defendant told Hails that he had known Degrave for approximately eight months and that she contacted him for the purpose of delivering methamphetamine. The defendant had approximately two ounces of methamphetamine, and Degrave and Pino also had two ounces. Degrave informed the defendant he would receive $500 to $600 from the transaction. The defendant sat in the back seat of Pino's vehicle. Degrave combined the methamphetamine and completed the transaction with Clarida. The defendant and Degrave argued in the gas station gambling area over the money, as the defendant was not provided with his portion.

¶ 11    Defense counsel proceeded by proffer, stating that the defendant was 55 years old and resided in Swansea, Illinois, with his mother who was in failing health. He was employed and had graduated from high school. He was not on probation, parole, or work release at the time of his arrest and did not have a record of failure to appear.

¶ 12    The State then proceeded to argument, asking for the defendant to be detained under either of the defendant's charges, as both counts, unlawful methamphetamine conspiracy and unlawful possession of a weapon by a felon, were felonies that required a mandatory sentence if convicted. The defendant had 13 criminal convictions, 7 of which were felonies. He had a federal conviction

4

for methamphetamine distribution. He was convicted for the following offenses: methamphetamine delivery, possession of methamphetamine, aggravated fleeing or eluding a peace officer, delivery of controlled substance, possession of controlled substance, retail theft, resisting a peace officer, criminal damage to property, and driving on a revoked license. The defendant also had three pending cases in St. Clair County, and it was unclear from the pretrial services report if he was on conditional release for those cases. The pending charges were possession of methamphetamine, possession of a controlled substance, and driving on a revoked license. The State said that the defendant was 55 years old, reported being unemployed, and having used methamphetamine as recently as May 3, 2026, the day before the offense.

¶ 13 The State argued that it had a high likelihood of success at trial and that less restrictive means would be insufficient to deter the defendant from "committing more dangerous felonious behavior," especially when he already had pending charges and convictions. The State argued that in order to protect the defendant and other individuals who could engage "in the very dangerous practice of methamphetamine delivery and purchasing with" the defendant should be detained. The State said that methamphetamine sales were dangerous by their nature and the defendant was armed with brass knuckles, which the defendant claimed he did not know were illegal to own, but he did possess them as a convicted felon. Due to the defendant's history and his actions in this case, the State asked for the defendant to be denied pretrial release.

¶ 14 Defense counsel asked for the defendant's release on home confinement with electronic monitoring at his mother's home in Swansea. She was in poor health, and the defendant was her primary caregiver. There were no injuries or allegations of violent behavior, and the brass knuckles were not readily available to anyone.

5

¶ 15    The circuit court stated that in the defendant's favor, it considered that there were no injuries or violence involved in the offenses, that he completed his high school education, and that he was an Illinois resident. While no firearm was used, the defendant did possess brass knuckles, which were illegal due to his status as a felon. However, the circuit court also considered that the defendant did not have any local ties. The nature and circumstances of the offense included "serious charges" of bringing methamphetamine into the community to deliver and sell. The defendant also had an extensive criminal history involving more than one prison term. Almost all the defendant's convictions involved methamphetamine. The defendant also had three pending cases. The circuit court said that there was a real and present threat to the safety of the community, and that no condition or combination of conditions would ensure that the defendant appeared for court and that he would not violate the law. The circuit court granted the State's petition. A written order entered the same day stated that less restrictive conditions would not assure the safety of any person or persons or the community based on the multiple incriminating statements made by Pino and Degrave and the nature of the weapon offense in proximity to the large amount of dangerous drugs. Further, the defendant should be denied pretrial release to protect Pino, Degrave, Clarida, the defendant's drug dealer, and other members of the public involved in methamphetamine dealings with the defendant.

¶ 16    Defense counsel filed a motion for relief and immediate release. The motion noted that the circuit court found, by clear and convincing evidence, that the proof was evident or the presumption great that the defendant committed a qualifying offense, that he posed a real and present threat to the safety of any person or persons or the community, and that no condition or combination of conditions could mitigate the real and present threat. It argued, however, that the circuit court erred in granting the State's petition in that the State failed to meet its burden of proof

6

for all three elements of pretrial detention. It argued that the circuit court failed to fully consider the defendant's willingness to abide by any terms of pretrial release, the fact that no weapon was used in the commission of the alleged offense, that no injuries resulted from the alleged offense, and the defendant's employment opportunities.

¶ 17    The matter proceeded to a hearing on the motion on May 14, 2026. Defense counsel provided the same proffer as at the initial hearing and stated that the circuit court failed to consider the defendant's willingness to abide by any terms of pretrial release, the fact that no weapon was used in the commission of the alleged offense, that no injuries resulted from the alleged offense, and the defendant's employment opportunities. Defense counsel asked for the defendant's release on home confinement with electronic monitoring.

¶ 18    The State asked the circuit court to take judicial notice of the factual proffer provided during the initial pretrial detention hearing, which it did. The State said that the defendant reported being unemployed to pretrial services, and the court considered his employment opportunities at the initial detention hearing. The defendant admitted contributing methamphetamine that was sold to Clarida. The defendant had an extensive criminal history involving methamphetamine and other controlled substances, as well as resisting and eluding law enforcement. The State asked that the court deny the defendant's motion for relief.

¶ 19    After addressing the factors included in the motion for relief, the circuit court denied the motion. The defendant appealed.

¶ 20                                II. ANALYSIS

¶ 21    The Office of the State Appellate Defender (OSAD) was appointed to represent the defendant. OSAD filed a memorandum pursuant to Illinois Supreme Court Rule 604(h)(7) (eff. Apr. 15, 2024) on behalf of the defendant. On appeal, the defendant argues that the State failed to

7

prove, by clear and convincing evidence, that he posed a real and present threat to any person or persons or the community. The defendant does not challenge the court's findings that the State proved that the proof was evident or the presumption great that the defendant committed a detainable offense, or that no condition or combination of conditions could mitigate that threat. These issues have thus been abandoned on appeal. See *People v. Drew*, 2024 IL App (5th) 240697, ¶ 21; Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024) ("If a memorandum is filed, it must identify which issues from the motion for relief are being advanced on appeal.").

¶ 22    Pretrial release is governed by article 110 of the Code of Criminal Procedure of 1963 (Code), as amended by Public Act 101-652 (eff. Jan. 1, 2023), sometimes referred to as the Pretrial Fairness Act. Under article 110 of the Code, a defendant's pretrial release may only be denied in certain limited situations. See 725 ILCS 5/110-2(a), 110-6.1 (West 2024). If the State files a petition requesting denial of pretrial release,

> "the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that a defendant has committed a qualifying offense, that the defendant's pretrial release poses a real and present threat to the safety of [another] person or the community or a flight risk, and that less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution." *People v. Vingara*, 2023 IL App (5th) 230698, ¶ 7.

See 725 ILCS 5/110-6.1(e), (f) (West 2024). Our supreme court has instructed that "[e]vidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question." *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 74; *People v. Stock*, 2023 IL App (1st) 231753, ¶ 12.

¶ 23   The court is provided a nonexhaustive list of factors it should consider when determining whether a defendant poses a real and present threat to the safety of any individual(s) or the community. These include the following:

"(1) The nature and circumstances of any offense charged, including whether the offense is a crime of violence, involving a weapon, or a sex offense.

(2) The history and characteristics of the defendant including:

(A) Any evidence of the defendant's prior criminal history indicative of violent, abusive, or assaultive behavior, or lack of such behavior. Such evidence may include testimony or documents received in juvenile proceedings, criminal, quasi-criminal, civil commitment, domestic relations or other proceedings.

(B) Any evidence of the defendant's psychological, psychiatric or other similar social history which tends to indicate a violent, abusive, or assaultive nature, or lack of any such history.

(3) The identity of any person or persons to whose safety the defendant is believed to pose a threat, and the nature of the threat.

(4) Any statements made by, or attributed to the defendant, together with the circumstances surrounding them.

(5) The age and physical condition of the defendant.

(6) The age and physical condition of any victim or complaining witness.

(7) Whether the defendant is known to possess or have access to any weapon or weapons.

(8) Whether, at the time of the current offense or any other offense or arrest, the defendant was on probation, parole, aftercare release, mandatory supervised release, or

9

other release from custody pending trial, sentencing, appeal, or completion of sentence for an offense under federal or State law.

(9) Any other factors, including those listed in Section 110-5 of this Article deemed by the court to have a reasonable bearing upon the defendant's propensity or reputation for violent, abusive, or assaultive behavior, or lack of such behavior." 725 ILCS 5/110-6.1(g)(1)-(9) (West 2024).

No one factor is determinative, and the court must base its decision on an individualized assessment. *People v. Atterberry*, 2023 IL App (4th) 231028, ¶ 15 (citing 725 ILCS 5/110-6.1(f)(7) (West 2022)).

¶ 24 Our standard of review of pretrial release determinations is dependent on whether the circuit court heard live witness testimony or whether the parties proceeded solely by proffer or submission of documentary evidence. Where the parties to a pretrial detention hearing proceed solely by proffer or submission of documentary evidence, this court stands in the same position as the circuit court and may conduct its own independent review of the proffered evidence, thus reviewing the record *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 54. Because the parties proceeded solely by proffer, our review is *de novo*.

¶ 25 On appeal, the defendant argues that the circuit court erred in granting the State's petition to deny pretrial release because the defendant did not pose a "real risk of violence" to the codefendants or anyone else. The defendant asks this court to review the legislative intent of the Code as it pertains to the denial of pretrial release (725 ILCS 5/110-6.1(e)(3) (West 2024)) and reach the conclusion that a "real and present threat to the safety of any person or persons or the community" requires "risk of violence." We decline to do so, as we have already addressed this issue in *People v. Johnson*, 2023 IL App (5th) 230714.

¶ 26    In *Johnson*, the defendant was charged with armed violence, unlawful possession of weapons by a felon, and manufacture or delivery of a controlled substance. *Id.* ¶ 3. In reviewing the Code and the argument that the legislative intent included only a risk of violent criminal acts, we found that,

> "The intent of the legislature is clear from the plain language of the statute—that the circuit court may deny a defendant pretrial release only if the defendant's pretrial release poses a real and present threat to the safety of any person, persons, or the community. [725 ILCS 5/110-6.1(a)(1) (West 2022)]. If the legislature intended that pretrial release be denied only where the defendant poses a real and present threat of committing 'violent criminal acts,' the legislature could have added that language as easily as the defendant. Absent such language, and considering the Act as a whole, we are not persuaded by the defendant's proposed construction." *Johnson*, 2023 IL App (5th) 230714, ¶ 21.

The defendant asserts that this court's rationale on this issue is "unsound," but does not provide any binding authority to the contrary on this court's interpretation. As such, we decline to find that the legislative intent of the Code included only a risk of violence.

¶ 27    We now consider, as the circuit court did, the record presented by the State. First, the nature and circumstances of the offense charged against the defendant involved a conspiracy to distribute methamphetamine and possession of a weapon by a felon. 725 ILCS 5/110-6.1(g)(1) (West 2024). The defendant claimed not to know that felons could not possess brass knuckles, which he admitted were his and that he kept for his "protection." Even though they were not used during the commission of the offense, the defendant was still known to have access to a weapon. *Id.* § 110-6.1(g)(7). The defendant also had a significant criminal history, totaling 13 convictions, 7 of which were felonies, beginning in 1990 and continuing through 2025, when the defendant was charged

11

with three cases in St. Clair County for possession of methamphetamine and a controlled substance, and driving on a revoked license. *Id.* § 110-6.1(g)(2). Eight of the defendant's 13 convictions involved methamphetamine as well, resulting in multiple prison sentences in IDOC and the Federal Bureau of Prisons. The defendant also scored a level five out of six on the Virginia Pretrial Risk Assessment Instrument – Revised, meaning his calculated failure rate of violating terms of pretrial release conditions was 29.3%. *Id.* § 110-6.1(g)(2). Given all these factors, the State proved by clear and convincing evidence that the defendant posed a real and present threat to the safety of the community and other individuals involved in methamphetamine dealings with the defendant.

¶ 28    The defendant advanced no further argument on appeal; thus, we affirm the circuit court's orders granting the State's petition to detain and denying the defendant's motion for relief.

¶ 29                                  III. CONCLUSION

¶ 30    Based on the foregoing reasons, we affirm the circuit court's orders of May 5, 2026, and May 14, 2026.


¶ 31    Affirmed.